## BRANCH and others *v.* HAAS.

(*Circuit Court, M. D. Alabama.* February, 1883.)

1. CONFEDERATE BONDS—CONTRACT TO SELL AND DELIVER—SUIT FOR BREACH.

As the bonds of the confederate states have been declared illegal by the fourteenth amendment to the constitution of the United States, a contract for the sale and delivery of such bonds at a specified rate per 1,000, entered into since the war, is void, and a suit for damages for a failure to deliver as promised cannot be maintained.

2. CONTRACT—CONSIDERATION—ILLEGAL TRANSACTION.

When a contract is connected by its consideration with an illegal transaction, a court of justice will not aid its enforcement.

At Law. Heard on demurrer to plea. The opinion states the case sufficiently.

*Bragg & Thorington,* for plaintiffs.

*Rice & Wiley,* for defendant.

BRUCE, J. This suit is brought for damages for the breach of a contract of sale of 200 bonds, of the numerical value of $200,000, which the plaintiffs allege they purchased of the defendant at the rate and price of four dollars per thousand, to be delivered to plaintiffs by the twenty-ninth day of October, 1881, which the defendants failed to do, to the damage of the plaintiffs in the sum of $1,500.

The plea is the general issue, and a special plea to which the demurrer is directed, which alleges—

"That the contract sued on was based upon the sale by defendant for future delivery to plaintiffs of certain obligations, commonly called confederate coupon bonds, that were issued by a combination called the southern states of America, in open and avowed renunciation of the authority of the government of the United States, and for the express purpose of making war against and overthrowing the lawful government of the said United States; that said contract, which is the foundation of this suit, was an illegal transaction, opposed to public policy and void; and that the consideration of said contract is illegal, under the principles of public policy, the constitution of the United States, and the laws of congress. * * *"

To this plea a demurrer is interposed, and the question raised by the demurrer is whether the facts stated in the plea constitute a defense to the action.

The question, then, is, can a contract for the purchase of confederate coupon bonds and an undertaking to deliver them be enforced, or will the court entertain a suit to recover damages against a party for a failure to comply with the terms of a contract for such bonds or obligations? That the bonds themselves are void there can be no question, for they were issued in violation of public policy, and by a pretended government asserting itself in hostility to the lawful government of the United States, which has long since ceased to have any actual existence, and never had any legal or rightful existence, as determined by the final arbitrament of war. Not only so, but after the war of the rebellion, and after the so-called government of the confederate states of America, under the authority of which these bonds were issued, had ceased to have any actual existence, the constitution of the United States was amended, and by section 4 of the fourteenth amendment of the same it is provided:

"The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing the insurrection or rebellion, shall not be questioned; but neither the United States nor any state shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave, but all such debts, obligations, and claims shall be held illegal and void."

The bonds in question, then, are illegal and void by the constitution of the United States. But it is said, and the argument is, that this suit is not brought upon the illegal and void bonds or obligations, but is brought upon a separate and independent contract, which is not tainted with the illegal character of the bonds for the sale and delivery of which the contract upon which the suit is brought was made. True, the suit is not upon the bonds, but it is on a contract for the sale and delivery of bonds, which bonds, by the constitution of the United States, must be held illegal and void. What, then, is there to support the promise and undertaking of the defendant to sell and deliver the void bonds?

The defendant, by the terms of the contract, was to receive four dollars per 1,000 for the bonds. He failed to deliver them according to his undertaking and promise, and to recover damages against him for this breach of his contract this suit is brought. If the defendant had delivered these void and illegal obligations and taken a note or

other written obligation for the price, can it be maintained that the obligation would be good as a separate and independent contract, though the entire consideration for which it was given was illegal and void? In such a case, the note might be said to be collateral to the illegal obligation and one remove from it, so that it is not infected with the taint which inheres in the bonds for which it was given; but how can a contract or obligation be separated from the consideration upon which it is made? And while a promissory note or written obligation is *prima facie* evidence of a good and valuable consideration, yet, if such consideration is, in fact, illegal, and shown to be so, the note cannot be enforced, for it is without consideration to support the promise.

If it be correct, then, that the sale and delivery of the obligations in question could not support a promise to pay for them, it follows that the failure to deliver according to promise cannot raise any implied promise such as would support a suit for damages on account of such failure. This view of the subject is supported by the supreme court of the United States in the case of *Hanauer* v. *Doane,* 12 Wall. 343; *Hanauer* v. *Woodruff,* 15 Wall. 439; *Sprott* v. *U. S.* 20 Wall. 459.

In the case of *Hanauer* v. *Woodruff,* cited *supra,* the court says:

"The contract sued on is not the same but a different contract, yet it is connected with that contract by the fact that the bonds constitute its consideration. * * * It thus draws to itself the illegality of the original transaction. * * * When a contract is thus connected, by its consideration, with an illegal transaction, a court of justice will not aid its enforcement."

The plaintiff relies upon the authority of *Thorington* v. *Smith,* 8 Wall. 1. That was a case where property had been sold in 1864, while the war was flagrant. The property was real estate. A portion of the purchase money was paid in confederate treasury notes, which was the currency, and substantially the only currency, in circulation at the the time here, in Montgomery, Alabama, where the transaction took place and where all the parties resided at the time. A note was given for the unpaid portion of the purchase money, $10,000, and after the war ended and the confederate states of America passed out of existence, suit was brought for the unpaid portion of the purchase money of the property, and the question was whether the note could be enforced. The transaction of sale of which it was a part was in confederate treasury notes, and it was proposed to be shown that it was the understanding of the parties that the note also was to be paid in

the same currency. The court held that such contracts could be enforced in the courts of the United States, after the restoration of peace; "to the extent of their just obligation," but the opinion of the court shows that this result was reached, not because of any recognition of confederate treasury notes as of any just and valid obligation, or that transactions based upon such currency should be upheld, except as to persons residing within confederate lines, and where such currency was the only currency in which exchanges in the common transactions of life could be made; and in speaking of such currency the court said in that case: "It must be regarded, therefore, as a currency imposed upon the community by irresistible force."

This case of *Thorington* v. *Smith* is commented on in the subsequent case, *Hanauer* v. *Woodruff*, cited above, which was a suit on a promissory note, dated at Memphis, Tennessee, December 22, 1861, the consideration of which was bonds issued by the authority of the convention of Arkansas which attempted to carry the state out of the Union, for the purpose of supporting the war levied by the insurrectionary bodies then controlling the state against the federal government. In that case the court held that the bonds did not constitute a valid consideration for the note sued on, even though bonds of that character were used as a circulating medium in Arkansas and about Memphis, Tennessee, in the business transactions of the people.

On page 449 the court distinguishes this case from the case of *Thorington* v. *Smith*, and says: "The difference between the two cases is the difference between submitting to a force which could not be controlled and voluntarily aiding to create that force."

It is argued that the transaction in question having taken place long since the war, there could have been no intent and no effect which could in any way afford aid to the rebellion, and that, therefore, the transaction is not obnoxious to public policy and may be treated as valid. The origin, however, of such bonds and obligations as we are now considering is such, and the relation of their makers to the government of the United States is such, that a court of the United States must hesitate to give them any recognition whatever. Confederate treasury notes and coupon bonds were all tainted with the illegal purpose which was the occasion and gave rise to their issue, and the fact that the confederate states of America, so called, failed to make good the purpose of its illegal organization, did not and could not remove the taint, but the contrary; and the exception made in favor of currency, not bonds, arose out of the necessity of the case,

and to prevent injustice to people who, when war was flagrant, had no other currency in which to make the exchanges required in the ordinary business of life.

The case at bar does not fall within this exception, and the illegality of the bonds in question is not left to the general principles of public policy, but it is determined by the written law of the land—the fourteenth amendment to the constitution of the United States.

The demurrer is overruled.