[No. 21532. Department Two. March 18, 1929.]

LEWIS PERKINS *et al., Appellants,* v. WM. D. PERKINS *et al., Respondents.*[1]

*McClure & McClure* and *Walter S. Osborn,* for appellants.

*Carroll Hendron,* for respondents.

FRENCH, J.—In March, 1923, appellants were the owners of certain property in the city of Seattle. The respondent was, and had been for some years prior thereto, the agent for appellants, and handled this property and certain other business transactions. About that time, the appellant being desirous of selling the property, respondent, acting as agent for them, arranged a sale to a Seattle contractor for $20,000, of which $10,000 was paid in cash, and $10,000 to be paid by a second mortgage. A $65,000 mortgage bond issue was floated on the property by respondent, the agreement being that the purchaser of the property, himself

[1]Reported in 275 Pac. 541.

a contractor, would furnish such additional money as was needed in addition to the proceeds of the first mortgage, and build an apartment house on the property.

Appellants were, at all times, nonresidents of Seattle, and the respondent William D. Perkins was acting as their agent throughout the entire transaction. At the time the building of the apartment house commenced, the property was subject to the $65,000 first mortgage and $10,000 second mortgage, the second mortgage being payable $200 per month. The contractor failed to pay his labor and material bills, and the lien claims were purchased by respondent, who also advanced certain money necessary to complete the building.

The first and only knowledge appellants had of the situation was shown by the following letter:

"Mr. Lewis Perkins,
417 Stockton Street,
San Francisco, California.
Dear Sir:—

"The party to whom we sold the Engle Property, John Hakanson, who took the title in his brother-in-law's name, M. Ryberg, has failed to raise the necessary amount of money to pay for completion of the building and has left the matter with the architect and ourselves. We are having it finished and will have to have the unpaid bills for labor and material foreclosed under the terms of the mortgage which you hold, in order to protect the amount of money which we are advancing.

"Unfortunately, Hakanson has a very stubborn nature, and we are unable to get him to take any further action. He is trying to sell his equity for what he can get. The building will be ready for occupancy on the first of the month and more than half of the apartments are already rented. Within a week, I believe every apartment will be taken and the revenue will amount to approximately $1,600 a month.

"Fifteen days after executing your mortgage, Ryberg executed a Trust Deed to Hakanson for $20,000 which was to be raised by issuing certificates against the rentals, to be used in payment of the work on the building. He has negotiated some of them with the material men and used some to pay old debts which he owed, and has some $3,000 or $4,000 remaining, which under the terms of the trust he can issue to himself and hold the rentals. In order to cut out these trust certificates, we want to foreclose the liens under your mortgage and then make the best settlement with the parties holding the certificates for labor and material on the building that we can. In most instances I have found that these parties simply increased their contract prices sufficient to cover the same, and we can undoubtedly arrange with many to cancel them entirely.

"The building is particularly well built and is going to be a good revenue producer, but we have had to get in under the load to the extent of about $38,000. It will pay out even with this added cost, with proper nursing and careful business management, which I think we can give it. *The payments to you will, of course, not be affected by the foreclosure of the liens which are subsequent to your mortgage.*

"The fact of the matter is we got tied up with an unreliable man who had good recommendations. In order to handle this legally, it will be necessary for you to assign your mortgage to me for the purpose of clearing the title and adjusting the mess which Hakanson has gotten himself into.

"Awaiting your reply, I am,

"Yours truly,

"(Signed) Wm. D. Perkins, President."

As requested in the letter, appellant assigned and delivered the note and mortgage to Wm. D. Perkins, who commenced suit in the superior court of King county, and foreclosed the same, and on March 14, 1925, Wm. D. Perkins purchased the property for the full amount of the judgment, the amount of the judgment being in excess of $7,000, on the mortgage, ap-

proximately $38,000 and costs being the amount due on assigned liens for labor and material.

Continuing up to April 15, 1925, respondent made payments to appellants at the rate of $200 per month, plus interest, in accordance with the terms of the note and mortgage. Thereafter nothing seems to have been done in the matter until August, 1926, when appellant wrote making inquiry. The pertinent part of the letter is as follows:

"I am also very anxious of knowing particularly just what is the status of the property as to ownership. Upon your request I assigned the mortgage to you for foreclosure, and I assumed that the same was duly foreclosed, and that the equity of redemption expired, and that thereafter a deed was obtained. The mortgage was assigned, as you will remember, for the purpose of cutting out certain rental certificates, and you were acting for me as trustee in foreclosing the mortgage and taking title. I assume that you have taken the title in your own name and that of your company as trustee for me, but since I have been uncertain as to the particular way in which you have handled and are now handling the same, I would be obliged if you would give me the information, stating in whose name the deed was taken and on what date it was filed; also whether or not the ownership of the property stands in your name as trustee for me, subject only to the first mortgage and the third mortgage."

On September 22, 1926, respondent answered the foregoing letter as follows:

"You and the writer alone are interested in the title. I did not want the first mortgage foreclosed for a default in interest or principal. If the same should take place, you, as well as ourselves, would lose our entire amount. I have carried the burden and have done a great deal of work on this deal, for which no charge has been made. You have received more than you invested in the property, and I seem to be holding the sack. I, therefore, am of the opinion that you should

cancel your mortgage. If you are unwilling to do so, and want your cash, I can no doubt arrange with some one here to take over your interest at 5% or 10% discount, by guaranteeing the obligation.

"We used our resources to complete the building, and have protected your mortgage to some extent, but believe that you should reduce your price on the lot to the figure you were willing to take at the time the deal was made. We could have had the first mortgage foreclosed on the uncompleted building and wiped out all liens and incumbrances.

"All revenue from the building is used towards repairs, taxes, interest and payments on the first mortgage, which has been reduced to $60,500 to date. In order to get the building completed we paid the architect $2,000, his claim not being lienable. The writer, personally has paid one-half of the taxes this year, and paid for furniture of three apartments to help fill the building.

"Our foreclosure claim is on the same basis with your second mortgage, and interest will be paid when there is money applicable. Unless conditions improve in that district, instead of going back, we shall probably suffer further loss. You have already had a good profit on your original investment and are on velvet. We are carrying a heavy load which might have been avoided. I think, under the circumstances, that it would be no more than right that you should consider your claim paid in full."

Thereafter appellants commenced this action, seeking to recover the amount still due them, amounting to $6,400, with interest, and to declare it a prior, paramount, and superior claim to any right, title or interest that the respondent had in the property, and asking general equitable relief.

The lower court held that the appellants and respondent are the owners of interests in the property in proportion to the relations their investments bear to each other. This appeal follows.

It should be remembered in this case, at all times, that the relationship existing between appellants and the respondent was that of principal and agent, that this relationship of principal and agent had existed for many years, and that appellants were nonresidents of the city of Seattle and of the state of Washington; that, practically speaking, the only communciation between these parties as to this particular transaction is contained in the letters heretofore quoted. It will be noticed that, in the first letter from respondent, it is stated:

"In order to handle this legally, it will be necessary for you to assign your mortgage to me for the purpose of clearing the title and adjusting the mess which Hakanson has gotten himself into."

It is also stated:

"The payments to you will, of course, not be affected by the foreclosure of the liens which are subsequent to your mortgage."

And stated in another place in the letter: "In order to cut out these trust certificates we want to foreclose the lien under your mortgage."

The facts in this case are not in dispute. Respondent was the owner of some $38,000 of assigned mechanics' and material men's liens, which were subsequent to the second mortgage held by appellants. He was acting as agent for appellants. He had, through his office, floated the first mortgage bonds. Undoubtedly, in good faith, he believed that the apartment house which had been erected and completed, would pay all claims against the property. At the time the second mortgage was assigned and sent to respondent, the claims against the property stood as follows:

First mortgage bonds, $65,000, constituting a first claim;

Second mortgage held by appellants in the sum of $10,000 on which $200 monthly payments had been made, and amounting at that time to about $9,000, constituted the second claim;

Labor and material men's liens, amounting to some $38,000, at that time assigned to respondent, constituted the third claim.

The only question in this case is whether or not the respondent can, without knowledge and consent of appellants, make his claim, which was third in order of priority, equal to, and on a parity with, appellants' claim.

An agent will not be permitted to obtain or receive a position of advantage secured at the expense of his principal. Bispham's Principles of Equity (10th ed.) § 232; Pomeroys' Equity Jurisprudence, vol. 2 § 959; Meacham on Agency (2d ed.), § 1189.

The law will not permit an agent to acquire an interest in the property which is the subject matter of the agency without full disclosure to the principal of all the facts. 2 C. J., § 709; 21 R. C. L., 825, § 10.

These principles are announced also in *Hanna v. Haynes,* 42 Wash. 284, 84 Pac. 861; *Reed v. Johnson,* 27 Wash. 42, 67 Pac. 381, 57 L. R. A. 404.

There is nothing in this record to indicate that, in the purchase of the outstanding lien claims, respondent was acting in any way as agent for appellants or that appellants had any knowledge whatsoever thereof, save as set forth in the letter dated October 29, 1923. In this letter, there is an express promise that the foreclosure of the liens subsequent to the second mortgage, would not in any way affect the payments to be made on this second mortgage. The assignment of the second mortgage being made pursuant to such an agreement, gave appellants a clear right to equitable relief. The law will not permit the agent, because of the fact

that the title to the second mortgage and the indebtedness secured by it had been assigned to him, to modify or change in any particular the status of his principals to his advantage and to their disadvantage, and this regardless of his ultimate intention or utmost good faith.

Reversed, with instructions to hold appellants' claim second only to the lien of the first mortgage.

MITCHELL, C. J., MILLARD, MAIN, and PARKER, JJ., concur.