[No. 186-41233-2. Division Two. September 24, 1970.]

Kenneth W. Mayes, *Respondent,* v. Quenten Emery *et al., Appellants,* Dale Sweeney *et al., Respondents.*

*Ernest L. Meyer,* for appellants.

*Trena Belsito Worthington,* for respondent Mayes.

*Pebbles, Swanson & Lindskog* and *Harold A. Pebbles,* for respondent Sweeney.

*Lynch & Lynch* and *Neil J. Lynch,* for respondent Berschauer.

PEARSON, J.—Defendants Emery appeal from a judgment on a promissory note rendered in favor of plaintiff Mayes for $3,000 plus interest and attorney's fees of $500. Defendants also appeal from a judgment dismissing their counterclaim against plaintiff Mayes and defendants Sweeney as well as from the dismissal of their complaint against third party defendants Berschauer.

The action arose out of a real estate transaction and is the aftermath of the post-sale discovery of that singularly litigation-provoking insect, the termite.

Mayes listed his home for sale with Sweeney Realty Company, one of whose agents, Mrs. Biggs, in due time showed the house to Emery. Emery was then a resident of Nevada and was visiting Olympia in a weekend house search. Upon his return to Nevada, Emery determined to purchase the Mayes house, but since he had had experience with California's termite control policies, he insisted upon the following provision in the earnest money agreement: "The above offer is contingent upon foundation being free of dry rot and termites." The offer was duly accepted by Mayes. At no time in the pre-sale negotiations did Emery have any direct contact with the seller, Mayes.

After the earnest money agreement[1] was signed by both parties, Emery sent a night letter to Sweeney Realty which stated in part:

I, Quenten L. Emery, do hereby authorize and instruct

---

[1] Exhibit No. 1.

Betty Biggs agent for Dale Sweeney Realty to perform the following acts on my behalf: contact and hire if necessary a licensed contractor or person who in her estimation is capable to inspect and estimate costs if in need of repair the following at the residence of Kenneth Muyes [sic] . . . inspect foundation for dry rot and termites . . .

(Page 5 of exhibit No. 2.)

Pursuant to these directions, Mrs. Biggs retained an Olympia home building contractor, Berschauer, to inspect the premises and estimate various other items which were contained in the night letter. According to Mrs. Biggs, Berschauer was instructed to inspect for dry rot and termites. Berschauer denies any such direction, however, and stated that after he had completed his inspection of the various items of repair, Mrs. Biggs stated to him, "I wonder if the house has any termites?", whereupon, without proper light or tools, Berschauer looked at the joists as far under the house as he could see.

Nevertheless, Mrs. Biggs obtained Berschauer's signature on a repair estimate which she had prepared (exhibit No. 4) and which contained this statement: "Inspected foundation for dry rot and termites and found none." Berschauer testified that he did not read the document and would not have signed it had this statement been called to his attention, since he had not looked for dry rot at all, and had not really made a careful inspection for termites.[2] Berschauer received a $35 fee from Emery. Upon receipt of this estimate, Emery completed the sale, giving a $3,000 note as part payment for Mayes' equity.[3] He took possession of the property on December 10, 1967.

In early March of 1968, while removing a linoleum rug from one room, Emery discovered that the floor was tunneled by insects. A professional exterminator was called

---

[2]Berschauer's testimony is contradicted by Mrs. Biggs.

[3]The earnest money agreement called for a purchase price of $16,750, with $2,500 downpayment, assumption of a $11,250 mortgage, and a promissory note for $3,000 payable within 90 days after possession.

(Otho Martin, Jr.) who, found extensive damage to the sills[4] of the house, caused by termites, carpenter ants, and powder post beetles. Had the trial court accepted Martin's testimony on the extent of damage from termites, there would have been substantial evidence to warrant a finding that the condition contained in the earnest money agreement was not met.

The damage was discovered shortly after Emery had paid to Sweeney the $3,000 plus interest due on the note and received the seller's deed. Instead of seeking to rescind the sale, Emery directed Sweeney (who was acting also as closing agent) not to deliver the note proceeds to Mayes. This suit was commenced shortly thereafter, seeking recovery of the monies due on the note from both Emery and Sweeney.

The trial court entered these findings in support of its conclusion to dismiss Emery's damage claims against Mayes, Sweeney, and Berschauer:

(Finding of fact 6, assignment of error 1.)

Plaintiff and defendant Emery never personally met during the transactions and no direct communication took place between them. The only statements made relative to dry rot or termites were contained in the exhibits admitted into evidence and quoted from herein.

(Finding of fact 8.)

Defendant Emery was not in the state of Washington and the defendant Sweeney and his employee Betty Biggs performed services for defendant Sweeney as a part of their effort to complete the transaction herein.

(Finding of fact 10, assignment of error 3.)

That the third party defendant Berschauer was employed by defendants Emery to make an inspection. The evidence indicates his inspection was somewhat cursory in nature, but was good as defendants Emery could reasonably expect for the sum of $35. The evidence does not preponderate in favor of finding third party defendant

---

[4]Sills were defined by Martin as the first piece of wood sitting atop the concrete foundation to which the ribbon joists are attached.

Berschauer negligent in making the inspection when considering the price paid therefore.

It is our view that these findings do not reach the material issues raised by the evidence and are too uncertain to permit us to determine on what theory the trial court decided the case. *See Gnash v. Saari,* 44 Wn.2d 312, 267 P.2d 674 (1954).

In the first place, we have no indication from the findings or the court's oral decision as to whether or not the extent of termite infestation or dry rot constituted a substantial failure of the condition in the earnest money agreement. One view of the expert's testimony would have confined the termite damage to a relatively small area of the walls extending into the roof and repairable for approximately $150. On the other hand, the expert testified as to extensive "sill" damage from termites, carpenter ants, and powder post beetles, requiring repairs to the foundation area exceeding $1,000.[5]

We can assume, in light of finding of fact 10 (that Berschauer had made only a cursory examination), that the trial court believed an unfortunate condition material to the sale did exist which might have been discovered by more careful scrutiny. It is our view that the issues raised by the evidence require a finding as to this material fact.

Secondly, it cannot be disputed that the statement contained in the estimate of November 1, 1967 ("Inspected foundation for dry rot and termites and found none.") constituted an affirmative representation of a fact which had been made material to the sale by the inclusion of the condition in the earnest money agreement. However, in the context of the evidence the findings do not make it clear as to who was responsible for making the statement, and whether or not it was false.

It was defendant Emery's theory (and accepting Berschauer's version of the alleged deception practiced by Mrs. Biggs in obtaining his signature on the estimate this is

---

[5]The expert further testified that the average lay person does not differentiate between these harmful types of insects.

a reasonable hypothesis) that the statement constituted a representation by Sweeney Realty Company that the premises were free of dry rot and termites and that such representation would be imputed to the seller Mayes under agency law. It is the rule that where a real estate agent has either express or implied authority from the seller to make representations, the seller will be bound thereby. *See Gnash v. Saari, supra.*

It is also the rule that when a real estate agent is entrusted with all the negotiations up to the closing of the transaction, there is an implied authority to make representations which will bind the seller. *Jenness v. Moses Lake Dev. Co.,* 39 Wn.2d 151, 234 P.2d 865 (1951).

With no resolution of the factual dispute as to who between Mrs. Biggs and Berschauer was responsible for the erroneous representation (if it was erroneous), we are unable to assess the liability of the seller Mayes under the Jenness rule.

Likewise, the failure to resolve that factual dispute makes it impossible to assess the liability of Sweeney. There can be little doubt that if Mrs. Biggs did in fact trick Berschauer into making the representation as to the absence of dry rot and termites in the foundation, Sweeney would be liable in damages to Emery under either one of two possible theories. First, we think the conduct would amount to actual fraud if the trial court deemed the evidence clear and convincing. *Gnash v. Saari, supra.* Secondly, we think that when Mrs. Biggs undertook at Emery's instructions to hire a qualified contractor to make the inspection, there was sufficient evidence of an agency relation to give rise to a fiduciary duty to exercise good faith in the performance of such undertaking.

In Restatement (Second) of Agency § 1 (1958) agency is defined as follows:

> Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.

*See McCarty v. King County Medical Serv. Corp.,* 26 Wn.2d 660, 175 P.2d 653 (1946), approving this statement of the law.

It is our view that the night letter referred to above is factually sufficient to establish Emery as a principal and that Mrs. Biggs' actions thereafter were factually sufficient to establish her consent to act for him within the aforementioned definition.

We believe the court should clarify finding of fact 8, so that the agency issues as hereinbefore discussed may be resolved.

■ Lastly, there seems to be little disagreement that if Berschauer was negligent in making the inspection he would be liable to Emery for damages proximately caused thereby. The trial court's finding that Berschauer's inspection was as good as Emery could reasonably expect for the sum of $35 is hardly supportive of the conclusion that no liability exists. No authority has been cited in support of such a proposition. The amount of fee charged and paid for such an inspection would appear to be totally unrelated to the duty owed by Berschauer to Emery.

By his own testimony, Berschauer was informed by Mrs. Biggs that the inspection had to do with a prospective sale and he knew that the results of his inspection would be relied on by the prospective purchaser. If the court should believe Mrs. Biggs' testimony that Berschauer was asked to inspect for dry rot and termites and that he failed to make such inspection in a reasonably prudent manner, then sufficient basis of liability for negligence has been established. The findings as to Berschauer's negligence, if any, should be clarified without reference to the amount of fee he received for his services.

■ Where the findings are so incomplete as to deprive appellant of an opportunity to challenge them and where consideration of the legal questions involves speculation as to the legal theories the trial court pursued, it is necessary to set aside the judgment in its entirety and remand the cause with instructions to the trial court to enter or clarify

the findings on material issues as set forth in this opinion. Under CR 52, as construed by several decisions of the Supreme Court, it is necessary for the trial court to make ultimate findings of fact concerning *all* of the material issues. *See Bowman v. Webster,* 42 Wn.2d 129, 253 P.2d 934 (1953). *Gnash v. Saari,* 44 Wn.2d 312, 267 P.2d 674 (1954).

Respondent Mayes contends that since Emery has elected to pursue damages rather than rescission, judgment for the proceeds of the note plus interest and attorney's fees is proper. We agree that the election made entitled Mayes to the benefits of the note plus interest and reasonable attorney's fees. However, under the liberal provisions for setoff as prescribed in CR 13(j), Emery could set off any damages attributable to Mayes against the monies due on the note. Consequently, at this stage of the proceedings neither the amount due nor a reasonable sum for attorney's fees has been established. Accordingly, judgment on the note and for attorney's fees is also reversed.

Since Emery has challenged the award of $500 attorney's fees, we are compelled to reject that challenge in the event Mayes is exonerated on the damage claim. The amount awarded is not an abuse of discretion, even though no testimony was presented. *See Ranta v. German,* 1 Wn. App. 104, 459 P.2d 961 (1969).

We are not inclined to look favorably on an additional attorney fee on appeal where, as here, Mayes withdrew the net proceeds of the note upon the entry of judgment. *See Johnson v. Thompson Constr. Co.,* 1 Wn. App. 194, 460 P.2d 291 (1969).

Judgment reversed and remanded.

ARMSTRONG, C. J., and PETRIE, J., concur.