[No. 4089–II.   Division Two.   August 26, 1981.]

WALTER SIENKIEWICZ, *Respondent,* v. GARY A. SMITH, ET AL, *Appellants.*

*Quinby R. Bingham,* for appellants.

*A. Eugene Hammermaster* and *Hammermaster & Robbins,* for respondent.

PEARSON, J.—This is an appeal from a judgment granting specific performance of a real estate earnest money receipt and agreement. We find that the trial court erred in granting specific performance of the agreement and reverse.

The defendants, Gary and Shirley Smith, listed real property adjacent to their home with Crescent Realty in January 1977. In February, Tillie Steward, a real estate agent for Crescent Realty, advised the plaintiff, Walter Sienkiewicz, of the listing. On February 2, Ms. Steward prepared an earnest money agreement for Sienkiewicz in which he offered to purchase the property from the Smiths

for $20,000. Under the terms of the agreement, the Smiths were required to short plat the undeveloped parcel into four lots. The Smiths signed the agreement.

After the agreement was signed, the surveyor hired by the Smiths to short plat the undeveloped parcel advised the Smiths that the property could not be subdivided and sold in the manner called for in the earnest money agreement. Upon relaying this information to Crescent Realty, the Smiths were advised by Crescent Realty to ask the Pierce County Prosecutor's office whether there was a legal way to transfer the property. Mrs. Smith called the prosecutor's office; a representative of the office allegedly told her the sale could be completed if the Smiths gave one of the four lots to a third party who then sold it to Sienkiewicz, and that such a transaction would not violate the short plat laws.

On March 18, the Smiths quitclaimed what is referred to as lot 4 to their son, Martin Smith. On March 24, two new earnest money agreements were executed by the parties. One of the agreements covered lots 1, 2, and 3, and set a purchase price of $18,000. The second agreement described lot 4, and set a purchase price of $2,000. Both agreements set a June 1 termination date. On June 17, a fourth earnest money agreement was executed. Under the terms of that agreement, Smiths agreed to sell lot 4 to Sienkiewicz for $2,000. The fourth agreement included a September 1 termination date.

The sale of lots 1, 2, and 3 was closed during mid–August. At the time the sale of these three lots closed, Sienkiewicz was told by Ms. Steward that closing on the fourth lot would be delayed to avoid problems with the short plat laws. The Smiths testified that they were never advised that this was the reason the sale of the fourth lot did not close; they believed the delay was caused by Sienkiewicz' bank. In late October, Mr. Smith advised Crescent Realty that as the termination date had passed on the June 17 earnest money agreement, he did not plan to carry through with the sale of the fourth lot. This action was

subsequently filed by Sienkiewicz to obtain specific performance of the June 17 earnest money agreement. Following a bench trial, the court granted specific performance as to the fourth lot. The net effect is that the property has been divided into five parcels, in view of the fact that the sellers retained a lot for themselves.

Defendants contend the court should not have granted specific performance, as the earnest money agreements violate this state's platting laws. *See* RCW 58.17. They contend the violation will cause defendants to commit a gross misdemeanor under RCW 58.17.300[1] and subject them to an action for damages or for rescission under RCW 58.17-.210 if Pierce County should decline to grant authority to develop the fourth lot.

We agree that the earnest money agreements entered into by Sienkiewicz and the Smiths violate this state's platting laws, where no final plat was filed. *See* RCW 58.17.200.[2]

RCW 58.17.020 contains the following definitions:

(1) "Subdivision" is the division of land into five or more lots, tracts, parcels, sites or divisions for the purpose of sale or lease and shall include all resubdivision of land.

---

[1]RCW 58.17.300 provides:

"Any person, firm, corporation, or association or any agent of any person, firm, corporation, or association who violates any provision of this chapter or any local regulations adopted pursuant thereto relating to the sale, offer for sale, lease, or transfer of any lot, tract or parcel of land, shall be guilty of a gross misdemeanor and each sale, offer for sale, lease or transfer of each separate lot, tract, or parcel of land in violation of any provision of this chapter or any local regulation adopted pursuant thereto, shall be deemed a separate and distinct offense."

[2]RCW 58.17.200 provides:

"Whenever any parcel of land is divided into five or more lots, tracts, or parcels of land and any person, firm or corporation or any agent of any of them sells or transfers, or offers or advertises for sale or transfer, any such lot, tract, or parcel without having a final plat of such subdivision filed for record, the prosecuting attorney shall commence an action to restrain and enjoin further subdivisions or sales, or transfers, or offers of sale or transfer and compel compliance with all provisions of this chapter. The costs of such action shall be taxed against the person, firm, corporation or agent selling or transferring the property."

. . .

(6) "Short subdivision" is the division of land into four or less lots, tracts, parcels, sites or subdivisions for the purpose of sale or lease.

Under RCW 58.17.020(1), the transactions between the parties here fall within the definition of a "subdivision" and as such, a final plat was required. RCW 58.17.200.

Short subdivision defined in RCW 58.17.020(6) must comply with local regulations adopted pursuant to RCW 58.17.060 and 58.17.030. RCW 58.17.060 provides:

> The legislative body of a city, town, or county shall adopt regulations and procedures, and appoint administrative personnel for the summary approval of short plats and short subdivisions, or revision thereof. Such regulations shall be adopted by ordinance and may contain wholly different requirements than those governing the approval of preliminary and final plats of subdivisions and may require surveys and monumentations and shall require filing of a short plat for record in the office of the county auditor: *Provided,* That such regulations must contain a requirement that land in short subdivisions may not be further divided in any manner within a period of five years without the filing of a final plat . . .

Although RCW 58.17.060 gives local governments wide latitude in establishing regulations governing short subdivisions, the statute does not give such bodies the power to adopt regulations or policies which in effect defeat the purposes and goals of RCW 58.17.

■ A regulation or policy cannot stand which would allow a party to avoid the provisions in RCW 58.17 governing short subdivisions by a sham "gift" to a third party. The definition of a short subdivision includes all divisions of land "for the *purpose* of sale or lease." (Italics ours.) Although this definition does not by its express terms include bona fide gifts, it does include "gifts" made for the sole purpose of effecting a sale or lease.

There can be no doubt that the Smiths' transfer of lot 4 to their son by quitclaim deed was for the sole purpose of effecting a sale of the lot to Sienkiewicz. Mrs. Smith testified that lot 4 was deeded to Martin Smith on the advice of

the prosecuting attorney's office. Martin Smith testified that he was only holding the property for his parents, and that he was to sell the lot to Sienkiewicz on his parents' request. Because the transfer was for the purpose of effectuating a sale, the transaction, whether or not sanctioned by the Pierce County Prosecutor's office, violated RCW 58.17.

The issue is whether the courts should specifically enforce a contract which provides for the violation of a state statute or which is contrary to the public policy underlying the statute.

As a general rule, the courts of this state will not enforce such agreements. *Golberg v. Sanglier,* 27 Wn. App. 179, 616 P.2d 1239 (1980); *Waring v. Lobdell,* 63 Wn.2d 532, 387 P.2d 979 (1964); *State v. Northwest Magnesite Co.,* 28 Wn.2d 1, 182 P.2d 643 (1947). *Cf. Gilmore v. Hershaw,* 83 Wn.2d 701, 521 P.2d 934 (1974) (where the Supreme Court refused to allow contract vendees a rescission remedy for the sale of unplatted land under the pre–1969 platting laws because the legislature had not provided such a statutory remedy at the time of the sale). Rather, where a contract is based on an illegal act, the court will leave the parties where it finds them. *Hederman v. George,* 35 Wn.2d 357, 212 P.2d 841 (1949); *Reed v. Johnson,* 27 Wash. 42, 67 P. 381 (1901). As stated in J. Pomeroy, *Specific Performance of Contracts* § 286, at 651 (3d ed. 1926):

> Where two persons with equal knowledge and equally participating in the fault, have entered into an illegal agreement, and one of them has obtained by the other's voluntary act all the benefit of it for himself, his refusal to perform on his own part is, generally considered in itself alone, unjust and inequitable; but the law sustains him in this position, because it takes into account the interests of society and of the state, which demand the complete suppression of such agreements.

*Hederman v. George,* 35 Wn.2d at 362.

Thus, although the Smiths received more for lots 1 through 3 on a per lot basis than originally provided for in the first earnest money agreement, the courts will not aid

240

Sienkiewicz through an action for specific performance.

Having found the contract to be unenforceable because it violates this state's platting laws, we find it unnecessary to consider the Smiths' other assignments of error.

Reversed with directions to dismiss the action.

REED, C.J., and PETRICH, J., concur.

Reconsideration denied September 22, 1981.

Review granted by Supreme Court December 3, 1981.