[No. 48187-3. En Banc. August 5, 1982.]

WALTER SIENKIEWICZ, *Petitioner*, v. GARY A. SMITH, ET AL, *Respondents*.

*Hammermaster & Robbins,* by *A. Eugene Hammermaster,* for petitioner.

*Mann, King, Anderson, Bingham & Scraggin,* by *David J. Manger,* for respondents.

STAFFORD, J.—We are asked to decide whether an earnest money agreement which violates the platting and subdivision statutes may be specifically enforced. We hold that, under the facts of this case, the earnest money agreement may be specifically enforced.

In 1977, Gary and Shirley Smith, appellants in the Court of Appeals, decided to sell their home and adjacent undeveloped land. Unable to find a buyer, they agreed with their real estate agent to sell the undeveloped land and house separately.

Walter Sienkiewicz, respondent in the Court of Appeals and petitioner here, offered to buy the undeveloped land. In February of 1977 the parties entered into an earnest money agreement which specified that the total purchase price for the land would be $20,000 and that the Smiths would short plat the purchased property into four lots. Since the Smiths intended to retain the property on which

their home rests, it would be necessary to subdivide the total property into five lots.

The Smiths hired a surveyor to lay out the lot lines. He informed the Smiths that a division of the property into five lots would violate the short plat statutes, and that it would be necessary to follow the more expensive standard platting procedures. Thereafter, Mrs. Smith called the Pierce County Prosecuting Attorney's office to inquire whether there was a legal way to handle the transaction. She was informed that if one of the lots was conveyed to their son, the remaining property could be short platted. Pursuant to this advice, the Smiths conveyed one of the lots to their son.

New earnest money agreements were signed by the Smiths, their son and Mr. Sienkiewicz. Insofar as is relevant here, an earnest money agreement dated March 24, 1977, covered three of the unimproved lots and provided that each would be sold to Mr. Sienkiewicz for $6,000. An earnest money agreement dated June 17, 1977, covered the lot conveyed to the son and provided that it would be sold to Mr. Sienkiewicz for $2,000. Mr. Sienkiewicz testified that although each lot was worth $5,000, the pricing arrangement was agreed to as an incentive for him to purchase the fourth lot. He also testified that he was aware the transfer of the fourth lot to the Smiths' son was done to circumvent the platting and subdivision statutes and that he had no objection to the arrangement. The record indicates that all parties believed the measures taken were legal.

The sale of the first three lots was closed on August 16, 1977. The fourth lot was not transferred at that time, however, and the June 17 earnest money agreement expired on September 1, 1977. The Smiths subsequently refused to transfer the fourth lot, asserting the earnest money agreement had expired.

Mr. Sienkiewicz brought suit for specific performance or alternatively for damages. The trial court ordered specific performance and the Smiths appealed. The Court of Appeals reversed, holding the contract unenforceable as it

violated the platting and subdivision statutes. *Sienkiewicz
v. Smith*, 30 Wn. App. 235, 633 P.2d 905 (1981).

At issue, then, is whether a contract for the sale of land
which violates the platting and subdivision statutes is spe-
cifically enforceable. We reverse the Court of Appeals and
hold that although the platting and subdivision statutes in
effect at the time of the transaction dictate that a final plat
should have been filed,[1] the failure to do so in this particu-
lar factual setting does not prevent petitioner from seeking
specific performance of the earnest money agreement.

Laws of 1969, 1st Ex. Sess., ch. 271, § 2(1), (2) and § 17
provide that any parcel of land divided into five or more
lots must have a final plat of such subdivision filed for
record. Further, the prosecuting attorney may seek injunc-
tive relief against any party offering to sell or selling prop-
erty in violation of the platting and subdivision require-
ments in effect in 1977.[2]

Laws of 1969, 1st Ex. Sess., ch. 271, § 32 makes the
transfer of property in violation of Laws of 1969, 1st Ex.
Sess., ch. 271, § 20 a gross misdemeanor.[3] Further, Laws of

---

[1]Certain of the statutes in effect during the pendency of the instant transac-
tions were amended in 1981, after the Court of Appeals opinion was written. For
that reason this opinion will refer to the statutes by the session law then in effect.

We express no opinion as to whether the 1981 amendments may have an
impact on subsequent actions of a similar nature.

[2]Laws of 1969, 1st Ex. Sess., ch. 271, § 20.

"Whenever any parcel of land is divided into five or more lots, tracts, or par-
cels of land and any person, firm or corporation or any agent of any of them sells
or transfers, or offers or advertises for sale or transfer, any such lot, tract, or par-
cel without having a final plat of such subdivision filed for record, the prosecuting
attorney shall commence an action to restrain and enjoin further subdivisions or
sales, or transfers, or offers of sale or transfer and compel compliance with all
provisions of this act. The costs of such action shall be taxed against the person,
firm, corporation or agent selling or transferring the property."

[3]Laws of 1969, 1st Ex. Sess., ch. 271, § 32.

"Any person, firm, corporation, or association or any agent of any person, firm,
corporation, or association who violates any provision of this act or any local reg-
ulations adopted pursuant thereto relating to the sale, offer for sale, lease, or
transfer of any lot, tract or parcel of land, shall be guilty of a gross misdemeanor
and each sale, offer for sale, lease or transfer of each separate lot, tract, or parcel

1974, 1st Ex. Sess., ch. 134, § 10[4] prohibits the issuance of building permits, septic tank permits or other development permits in contravention of the existing platting and subdivision statutes, "unless the authority authorized to issue such permit finds that the public interest will not be adversely affected thereby." It also provides, however, that "[t]he prohibition contained in this section shall not apply to an innocent purchaser for value without actual notice." All purchasers or transferees of property are required to comply with the provisions of the effective platting and subdivision statutes and if they do not, "each purchaser or transferee may recover his damages from any person, firm, corporation, or agent selling or transferring land in violation of this chapter or local regulations adopted pursuant thereto . . . Such purchaser or transferee may as an alternative to conforming his property to these requirements, rescind the sale or transfer and recover costs of investigation, suit, and reasonable attorneys' fees occasioned thereby." Laws of 1974, 1st Ex. Sess., ch. 134, § 10.

Essentially, the thrust of Laws of 1969, 1st Ex. Sess., ch. 271, § 20 and Laws of 1974, 1st Ex. Sess., ch. 134, § 10 is the protection of the public at large and innocent purchas-

---

of land in violation of any provision of this act or any local regulation adopted pursuant thereto, shall be deemed a separate and distinct offense."

[4]Laws of 1974, 1st Ex. Sess., ch. 134, § 10.

"No building permit, septic tank permit, or other development permit, shall be issued for any lot, tract, or parcel of land divided in violation of this chapter or local regulations adopted pursuant thereto unless the authority authorized to issue such permit finds that the public interest will not be adversely affected thereby. The prohibition contained in this section shall not apply to an innocent purchaser for value without actual notice. All purchasers' or transferees' property shall comply with provisions of this chapter and each purchaser or transferee may recover his damages from any person, firm, corporation, or agent selling or transferring land in violation of this chapter or local regulations adopted pursuant thereto, including any amount reasonably spent as a result of inability to obtain any development permit and spent to conform to the requirements of this chapter as well as cost of investigation, suit, and reasonable attorneys' fees occasioned thereby. Such purchaser or transferee may as an alternative to conforming his property to these requirements, rescind the sale or transfer and recover costs of investigation, suit, and reasonable attorneys' fees occasioned thereby."

ers for value against violations of the platting statute. The remedies are limited to rescission or damages, although the prosecuting attorney may seek injunctive relief on behalf of the public. Those who are knowingly in violation of the effective platting and subdivision statutes may not avail themselves of the remedies accorded by the latter two sections. These two sections do not address the precise issue with which we are here concerned; that is, whether a purchaser may specifically enforce an earnest money agreement which is in violation of the platting and subdivision statutes.

In denying specific performance, the Court of Appeals stated: "where a contract is based on an illegal act, the court will leave the parties where it finds them". *Sienkiewicz,* 30 Wn. App. at 239. Although we have long held that generally an agreement violating a statute or municipal ordinance is void (*Golberg v. Sanglier,* 96 Wn.2d 874, 639 P.2d 1347 (1982); *Hederman v. George,* 35 Wn.2d 357, 212 P.2d 841 (1949); *Reed v. Johnson,* 27 Wash. 42, 67 P. 381 (1901)), this is not necessarily true where the agreement is neither immoral nor criminal in nature and the statute or ordinance subjects violators merely to a penalty without more. *See, e.g., Marriott Fin. Servs., Inc. v. Capitol Funds, Inc.,* 288 N.C. 122, 217 S.E.2d 551, 77 A.L.R.3d 1036 (1975). In *Marriott,* the North Carolina Supreme Court refused to grant rescission to a purchaser on the grounds that the vendor had not complied with a city platting ordinance. In so ruling, the court looked to the language and purpose of the statute and asserted that since the contract was neither immoral nor criminal, the penalty for violation is limited to the penalties expressly provided for in the statute. Rescission was not included among those penalties. *Marriott,* 288 N.C. at 128–29. *See also* Annot., *Failure of Vendor To Comply With Statute or Ordinance Requiring Approval or Recording of Plat Prior to Conveyance of Property as Rendering Sale Void or Voidable,* 77 A.L.R.3d 1058 (1977). This sentiment is echoed in *Gilmore v. Hershaw,* 83 Wn.2d 701, 521 P.2d 934 (1974), wherein we

refused to grant rescission for a violation of RCW 58.16 (the precursor of RCW 58.17), on the grounds that the Legislature specifically provided remedies other than rescission for violation of that platting and subdivision statute.

Based upon the foregoing, we hold it would be inappropriate to deny specific performance in the instant case. In so ruling, we join the majority of jurisdictions which have declined to hold that violations of platting statutes automatically render a contract for sale of real estate void. *See* Annot., 77 A.L.R.3d 1058.

We next turn to the question of whether the earnest money agreement for the sale of the fourth lot is enforceable since the time for performance had expired. The earnest money dated June 17, 1977, between the Smiths' son and Mr. Sienkiewicz provided that the sale of the fourth lot to Mr. Sienkiewicz was to be closed by September 1, 1977. The termination date fixed by the earnest money agreement passed without payment of the purchase price by Mr. Sienkiewicz.

The trial court found that Mr. Sienkiewicz was ready, willing and able at all times to conclude the transactions. Finding of fact 11 specifically states:

> The realtors, acting on behalf of the sellers, asked that the remaining parcel not be transferred at the same time as the other three parcels, because of their concern over the short platting process, and the plaintiff [Mr. Sienkiewicz] acquiesced in said request.

Consequently, the trial court deemed specific performance was appropriate.

We agree. There is substantial evidence to support Mr. Sienkiewicz' claim that the earnest money agreement did not terminate on September 1 because of conduct by the Smiths' agent giving rise to estoppel and waiver. *See, e.g., Nadeau v. Beers*, 73 Wn.2d 608, 440 P.2d 164 (1968); *Artz v. O'Bannon*, 17 Wn. App. 421, 562 P.2d 674 (1977). Further, there is substantial evidence that Mr. Sienkiewicz acquiesced in the request of the Smiths' agent to delay

closing. *See Henderson v. Johnson,* 66 Wn.2d 511, 403 P.2d 669 (1965); *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

Additionally, the trial court correctly concluded that Don Pregel of Crescent Realty, who listed the property for sale, and Ottilia Steward, also of Crescent Realty, who located the property for Mr. Sienkiewicz, were in fact the agents of the Smiths. *Alexander Myers & Co. v. Hopke,* 88 Wn.2d 449, 454–55, 565 P.2d 80 (1977); *Henderson v. Johnson, supra* at 512. Moreover, since the agents had authority not only to obtain a purchaser but were entrusted with all negotiations up to and including the sale itself, they had authority to make binding representations on behalf of the Smiths, such as the request that Mr. Sienkiewicz delay purchase of the fourth lot so as to avoid problems with the short plat statute. *See Alexander Myers & Co. v. Hopke, supra* at 454–55; *Mayes v. Emery,* 3 Wn. App. 315, 320, 475 P.2d 124 (1970). The Smiths are estopped from asserting and, alternatively, have waived their right to assert, that the earnest money agreement lapsed.

We reverse the Court of Appeals and reinstate the judgment of the trial court.

BRACHTENBACH, C.J., and ROSELLINI, UTTER, DOLLIVER, WILLIAMS, DORE, and DIMMICK, JJ., and WIELAND, J. Pro Tem., concur.