# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| YAN HONG ZENG, | No. 59580-0-II |
| --- | --- |
| Respondent, | |
| v. | |
| CASIMIR-SHELTON, LLC, a Washington limited liability company, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Yan Hong Zeng entered into a purchase and sale agreement with Casimir Shelton LLC to buy a parcel of commercial property in Mason County. Zeng sued for specific performance after Casimir failed to make the property available for inspection as required by the agreement. The trial court granted summary judgment in favor of Zeng and ordered specific performance. We affirmed. *Zeng v. Casimir-Shelton, LLC*, No. 56396-7-II (Wash. Ct. App. Oct. 18, 2022) (unpublished).[1]

Casimir then filed a motion for post-judgment relief and a motion for reconsideration. Casimir argued for the first time that Zeng missed deadlines to provide waiver or satisfaction of a feasibility contingency and to close the real property sale; thus, the agreement automatically terminated when the closing deadline expired and Zeng could no longer purchase the property. The trial court denied both motions. Casimir appeals.

---

[1] https://www.courts.wa.gov/opinions/pdf/D2%2056396-7-II%20Unpublished%20Opinion.pdf, *review denied*, 1 Wn.3d 1008, 528 P.3d 354 (2023).

We affirm and award attorney fees on appeal to Zeng consistent with the agreement terms.

FACTS

Zeng entered into a purchase and sale agreement with Casimir to buy a piece of commercial property in Mason County in November 2020. The agreement contained a "Feasibility Contingency" clause that allowed Zeng to inspect the property and determine whether to go forward with the purchase. Clerk's Papers (CP) at 27. The agreement provided that "[t]his [a]greement shall terminate . . . unless Buyer [Zeng] gives notice that the Feasibility Contingency is satisfied to Seller [Casimir] before 5:00pm on the Feasibility Contingency Date," which the parties agreed would be 30 days from the date of the agreement. *Id.* This notice, and any other notice pertaining to the agreement, had to be signed and delivered in writing to both Casimir and the listing broker.

The agreement designated Stanley Lam as the broker representing Zeng and Faustine Samec as the listing broker representing Casimir. The agreement granted the identified brokers authority to communicate for the buyer and seller, including to convey and accept counteroffers.

If the feasibility contingency was satisfied, the agreement required the parties to close 22 days later. The agreement stated that time was of the essence and that it would automatically terminate if the parties failed to close within that timeframe.

When Casimir failed to make the property available for inspection within the stipulated contingency period, Zeng sued for specific performance of the agreement. Zeng then sought summary judgment. In October 2021, the trial court granted Zeng's motion. It further ordered specific performance, requiring that the property be made available for inspection within 30 days and that the "parties proceed to promptly close the transaction" consistent with the agreement's

original terms if Zeng gave notice to Casimir that the feasibility contingency in the agreement was satisfied. CP at 17. By these terms, the deadline to close would December 6, 2021, if the feasibility contingency was satisfied on the last available day, November 14, 2021.

Casimir made the property available, and Zeng conducted her physical inspection on October 27, 2021. Zeng's broker, Lam, e-mailed the addendum waiving the feasibility contingency to Casimir's broker, Samec, the same day. The addendum explained that Zeng agreed to waive any further contingencies and move forward to closing. The closing deadline would therefore be 22 days later on November 18, 2021. The week following the feasibility contingency waiver, Lam e-mailed the designated escrow agent to direct preparation for closing documents. When he received no response, Lam sent a second e-mail to Samec again attaching the addendum.

After Samec failed to respond to Lam's original and follow-up e-mails about the feasibility contingency addendum, Lam called Samec. Samec informed Lam that Casimir "would not close the transaction[] and was going to appeal the trial court's order instead." CP at 55. Samec told Lam that Casimir had filed its notice of appeal earlier that week. On November 12, 2021, Samec replied in writing to Lam's feasibility waiver e-mail and reiterated Casimir's intent to appeal and its refusal to sign the addendum.

The same day, Casimir's counsel e-mailed Zeng's counsel to inform him of the pending appeal. In that e-mail, Casimir's counsel stated that he had "been instructed to file a lis pendens" to ensure Zeng and other interested parties had official notice of the ongoing dispute to prevent Zeng from later claiming to be a good faith purchaser. CP at 188. The e-mail's remaining several paragraphs discussed the calculation of the supersedeas bond amount that would stay the trial court's order until the outcome of the appeal.

3

A lis pendens was never filed and the record contains no further mention of one. Nor is there evidence that Casimir delivered an updated rent roll to the closing agent at least two days prior to the closing deadline, as required by the agreement. Instead, the attorneys for Zeng and Casimir engaged in nearly five months of dialogue over the bond amount. During this period, the deadline for the waiver or satisfaction of the feasibility contingency and the November 18, 2021, deadline for closing passed without acknowledgement from either party.

In April 2022, the parties filed, and the court signed, a joint stipulation to stay the trial court's order. The order stated that the parties agreed to stay the court's earlier order granting specific performance pending the outcome of the appeal or further order of the trial court. This court affirmed the trial court's judgment and order granting specific performance in October 2022, then denied Casimir's motion for reconsideration two months later. *Zeng*, No. 56396-7-II, slip op. at 13; Ord. Den. Mot. for Recons., *Zeng v. Casimir-Shelton, LLC*, No. 56396-7-II (Wash. Ct. App. Dec. 12, 2022). In February 2023, while Casimir's petition for Washington Supreme Court review was pending, Casimir's counsel suggested to Zeng's counsel for the first time that Zeng was in default for failing to close the transaction in December 2021. The Washington Supreme Court denied review. Ruling Den. Rev., *Zeng v. Casimir-Shelton, LLC*, No. 101610-7 (Wash. May 3, 2023).

Casimir filed a motion for post-judgment relief on the grounds that the purchase and sale agreement automatically terminated when Zeng failed to close by the deadline. In its reply to the trial court on this motion, Casimir made an argument about inadequate notice regarding feasibility for the first time. Thus, Casimir contended the purchase and sale agreement had automatically terminated well over a year before.

4

The trial court denied the motion for post-judgment relief. Casimir then filed a motion for reconsideration on the same grounds. The trial court denied this motion as well.

Casimir appeals.

## ANALYSIS

CR 60(b) governs post-judgment motions for relief. We review a trial court's decision on a motion for post-judgment relief for abuse of discretion. *Shandola v. Henry*, 198 Wn. App. 889, 896, 396 P.3d 395 (2017). We will also overturn a trial court's decision on a motion for reconsideration only if the trial court abused its discretion. *Rivers v. Wash. State Conf. of Mason Contractors*, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002).

## I. WAIVER

Casimir argues that Zeng's failure to deposit funds into escrow resulted in the transaction not closing by the closing deadline. Therefore, Casimir contends Zeng was in default and the agreement automatically terminated. Additionally, Casimir argues that Zeng failed to provide notice of the waiver or satisfaction of feasibility to both Casimir and its listing broker, as required by the agreement. Casimir contends this also constituted a buyer default, automatically terminating the agreement.

Zeng responds that Casimir waived these arguments by bringing them too late. Waiver is a mixed question of law and fact. *Brundridge v. Fluor Fed. Servs., Inc.*, 164 Wn.2d 432, 440, 191 P.3d 879 (2008). It is a question of fact whether a party has proven the facts on which waiver is based, but it is a question of law whether those facts amount to waiver. *Id.* at 441. When, as here, the facts are not in dispute, the issue is a question of law, which we review de novo. *Id.*

We hold that Casimir waived these deadlines when its agent refused to close and the parties negotiated a stay of the trial court order and associated security.

A.      What Constitutes Waiver

Waiver is the intentional and voluntary relinquishment of a known right. *Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94, 106, 297 P.3d 677 (2013). Waiver can either be express or implied through a party's conduct. *224 Westlake, LLC v. Engstrom Props., LLC*, 169 Wn. App. 700, 714, 281 P.3d 693 (2012). "A waiver by conduct occurs if the actions of the person against whom waiver is claimed are inconsistent with any intention other than waiver." *Shinn v. Thrust IV, Inc.*, 56 Wn. App. 827, 843-44, 786 P.2d 285 (1990). An intent to waive cannot be implied from ambiguous conduct. *224 Westlake*, 169 Wn. App. at 714. But it is possible to waive an argument by being dilatory in raising the argument too late in the litigation process. *Lybbert v. Grant County,* 141 Wn.2d 29, 40, 1 P.3d 1124 (2000) (applying waiver to an inconsistent and dilatory argument that service of process was insufficient). In *Lybbert,* the Washington Supreme Court emphasized the importance of "preventing the litigation process from being inhibited by inconsistent or dilatory conduct on the part of litigants." *Id.*

The Washington Supreme Court has also applied waiver in cases involving real estate sales. For example, in *Sienkiewicz v. Smith*, the two parties had a purchase and sale agreement for multiple lots that required the buyer to tender the earnest money by a specific deadline. 97 Wn.2d 711, 712-13, 649 P.2d 112 (1982). Before that deadline, the sellers' realtors requested to delay the transfer of one of the lots, and the buyer acquiesced. *Id.* at 717. After the original deadline passed without full tender of the lots or earnest money, the sellers argued that the agreement had terminated and was unenforceable. *Id.* However, the buyer "was ready, willing[,] and able at all

6

times to conclude the transactions." *Id.* The Washington Supreme Court held that the agreement did not terminate on the deadline "because of conduct by the [sellers'] agent giving rise to estoppel and waiver." *Id.*

B.     Communications by Brokers

Casimir first suggests that Samec's refusal to close cannot constitute waiver. It argues that "there is no evidence that the communication between the parties' brokers . . . was ever relayed to Respondent's or Appellant's Counsel." Appellant's Opening Br. at 17. Additionally, Casimir contends that at that point, litigation had been ongoing for almost a year, during which time communications were between counsel. So it was not reasonable for Zeng to rely on Samec's statements.

"It is a 'general and basic premise . . . that a real-estate brokerage firm with whom property is appropriately listed for sale becomes the agent of the seller for the purpose of finding a purchaser.'" *Holst v. Fireside Realty, Inc.*, 89 Wn. App. 245, 254, 948 P.2d 858 (1997) (quoting *Mersky v. Multiple Listing Bureau of Olympia, Inc.*, 73 Wn.2d 225, 228, 437 P.2d 897 (1968)). Where a seller has granted a real estate agent authority to make representations on its behalf, the seller will be bound by those representations. *Mayes v. Emery*, 3 Wn. App. 315, 320, 475 P.2d 124 (1970).

In *Sienkiewicz*, it was the realtors for the sellers who requested that the buyer delay in purchasing a lot. 97 Wn.2d at 718. The court held that the relators were the sellers' agents and had authority to make binding representations on their behalf. *Id.* So, their request to delay constituted waiver of the deadline. *Id.*

Casimir does not explicitly refute that Samec was its agent, nor does it refute that Samec had authority to make binding statements to Zeng. Casimir argues that its counsel was not aware that the notice given was inadequate. But the way that notice was provided was available to Casimir and its representatives, including counsel, had they communicated with one another. Furthermore, the agreement expressly granted Samec the power to make and accept counteroffers on behalf of Casimir. And, just as in *Sienkiewicz*, it was the sellers' agent that made statements regarding the sellers' intent, or lack thereof, to close by the deadline. We hold that Samec acted as Casimir's agent and therefore had authority to make binding representations on its behalf. Samec was thus able to waive the closing deadline on Casimir's behalf.

## C.     Closing Deadline

Casimir next asserts that it was "prepared to close the transaction." CP at 9. It argues that it was Zeng's failure to deposit funds in escrow that prevented it from taking any steps toward closing, namely the review of closing documents. Additionally, Casimir points to the e-mail from its counsel to Zeng's counsel, which mentioned an intent to file a lis pendens and initiated the bond amount discussions. It claims that the reference to the lis pendens demonstrates that Casimir "had a closing in contemplation at the time." Appellant's Opening Br. at 15. So, its actions reflected an intent to timely close or, at the very least, were ambiguous. Finally, Casimir argues that the agreement expressly made time of the essence, so the agreement's deadlines should have been strictly enforced.

Zeng responds that she was "ready, willing[,] and able" to close and would have done so if Casimir had not refused. CP at 56. Her broker had submitted the waiver of feasibility and directed the escrow agent to prepare closing documents when Casimir's broker informed him that

8

it would not close. Furthermore, Zeng argues that Casimir's subsequent behavior in negotiating and securing a stay of the trial court's order was inconsistent with a position that Zeng had lost the right to close the transaction.

Casimir replies that any of the negotiations and conduct that occurred after the deadline could not have constituted waiver.

Casimir relies on two cases for this argument. First, in *Nadeau v. Beers*, the Washington Supreme Court held that the sellers' initial acquiescence to the buyer's late earnest money payment did not constitute waiver without any conduct, inducing the default prior to the deadline. 73 Wn.2d 608, 610, 440 P.2d 164 (1968). There, although the sellers at first believed the money tender was timely, they reserved the right to consult their attorney before accepting the payment and upon discovery of the error, they "promptly disavowed" any obligation under the agreement. *Id.* at 610-11. Second, in *Mid-Town Ltd. Partnership v. Preston*, the parties extended the closing date and the new deadline passed without the parties discussing another extension. 69 Wn. App. 227, 231, 848 P.2d 1268 (1993). Then, upon the escrow agency's request, the seller provided a written certification of the initial agreement, affirming their authority to execute the deal. *Id.* Division One held that trial court erred in relying on the post-termination certification to indicate that the seller waived the deadline. *Id.* at 235.

We agree that post-termination conduct on its own cannot establish waiver. But those are not the circumstances here. Both Casimir's explicit refusal to close and the initiation of the stay negotiations occurred prior to the closing deadline. In *Sienkiewicz*, the realtor's request to delay the deadline was sufficient to establish waiver on its own. We see no basis for a different result

here. An express statement that one party will not uphold its end of the transaction is enough. It takes two parties to close, and Zeng could not achieve closing without Casimir's participation.

In addition, although Casimir's postdeadline conduct alone cannot prove waiver, it can be further evidence of a pre-deadline intent to waive. If Casimir had not intended to waive its right to promptly close, it is hard to imagine why it would engage in negotiations to ultimately stay the trial court's order. It also had the opportunity to save the parties' and the court's time and resources by moving to dismiss for mootness in the course of the prior appeal. Instead, it waited over a year to assert its right and failed to take any steps consistent with a desire to enforce the closing deadline. These actions contradict Casimir's claim that it intended to strictly enforce the closing deadline.

D.     Waiver of Feasibility

Finally, Casimir argues that the agreement automatically terminated when Zeng failed to effectively waive the feasibility contingency. The agreement specifically provided that all notices had to be delivered to the seller in addition to the listing broker. Lam only sent the waiver of feasibility to Casimir's broker, Samec. Casimir maintains that Zeng was in default and the contract automatically terminated on November 14, 2021, the last day Zeng could give proper notice. This argument fails.

Significantly, Casimir does not argue that there was a complete failure to give notice. Instead, it treated Zeng's timely notice as valid and even conceded she had waived the feasibility contingency in the motion for post-judgment relief. Casimir did not change course and raise the issue of notice until its reply to the motion for post-judgment relief, which it filed years after Zeng provided notice, with an intervening appeal. By waiting so long to raise this issue, Casimir waived

the argument that Zeng did not technically give notice correctly, especially where Casimir does not argue there was a lack of actual notice.

## II. EQUITABLE ESTOPPEL

Zeng also argues that because Casimir's current claim that the agreement terminated in late 2021 is "wholly inconsistent" with its prior statements and actions, Casimir should be equitably estopped from taking this new position. Br. of Resp't at 13. Zeng contends that at all times during the negotiations of the security bond to stay the trial court's order, Casimir "acknowledged the continuing effectiveness" of the agreement and the order. *Id*. at 11. Otherwise, Zeng would have immediately demanded strict compliance with the order and objected to Casimir's refusal to close. Casimir responds that the majority of the behavior Zeng references occurred after the passing of the deadline and cannot constitute a basis for estoppel. We hold that Casimir is also equitably estopped from advancing its new claim.

Equitable estoppel rests on the principle that a party cannot deny what they have already acknowledged. *Nickell v. Southview Homeowners Ass'n*, 167 Wn. App. 42, 53, 271 P.3d 973 (2012). Equitable estoppel has three requirements:

> (1) an admission, statement, or act inconsistent with a claim afterward asserted; (2) action by another in reasonable reliance on that act, statement, or admission; and (3) injury to the party who relied if the court allows the first party to contradict or repudiate the prior act, statement, or admission.

*Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 831, 881 P.2d 986 (1994). "'[U]nless only one reasonable inference can be drawn from the evidence, estoppel is a question for . . . the trial court.'" *Colonial Imports, Inc. v. Carlton Nw., Inc.*, 121 Wn.2d 726, 737, 853 P.2d 913 (1993) (quoting 28 AM. JUR. 2D *Estoppel and Waiver* § 149, at 831-32 (1966)).

"Estoppel is not favored and a party asserting estoppel must prove each of its elements by clear, cogent[,] and convincing evidence." *Berschauer/Phillips Constr. Co.*, 124 Wn.2d at 831.

Here, there can be no dispute that all three elements are established in this record. First, Casimir made statements and actions inconsistent with the claims it now asserts. Its agent twice told Zeng's agent that it "would not close," yet it now asserts that Casimir was willing to close and the agreement terminated because it was Zeng who failed to close. CP at 55. Casimir also claims that the trial court order was void as soon as the closing deadline passed, but it continued to negotiate a stay of that order for nearly five months after that date. Estoppel applies when one party's conduct damages another party who relies on that conduct. *See Berschauer/Phillips Constr. Co.*, 124 Wn.2d at 831. A party may continue to incur injury by relying on inconsistent behavior that continues after a deadline has passed. So we do not agree with Casimir's assertion that post-termination conduct cannot be considered to establish the elements of estoppel.

Second, Zeng stopped preparations for closing and did not move to further enforce the trial court order in reliance on Casimir's representations that the parties were going to stay the order pending appeal. This reliance was reasonable because Casimir never indicated in any way that it would not proceed with the transaction if closing did not occur by the deadline and Casimir lost its appeal.

Third, it is undisputed that Zeng would suffer an injury absent estoppel because she would be unable to purchase the property under the terms of the original agreement, and she incurred attorney fees for the first appeal in this matter during the time period after Casimir says the agreement automatically terminated. Furthermore, litigation is not a game of gotcha and estoppel

exists to prevent the significant waste of this court's, the trial court's, and parties' resources that Casimir advances here.

Because all three elements are satisfied, we hold that Casimir is estopped from claiming that the agreement terminated on the closing deadline. The trial court did not abuse its discretion when it denied Casimir's motion for post-judgment relief and its motion for reconsideration.

Finally, Zeng argues that Casimir's claims are barred by the law of the case doctrine and judicial estoppel because Casimir could have raised the expiration of the closing deadline in its first appeal. Because Casimir's claim fails under waiver and equitable estoppel, we need not reach these arguments.

### III. COSTS AND ATTORNEY FEES ON APPEAL

Zeng seeks costs and attorney fees on appeal. The purchase and sale agreement provides, "If Buyer or Seller institutes suit against the other concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and costs." CP at 35. Casimir does not respond to this request in its reply brief.

Zeng prevails on appeal so she is entitled to attorney fees and costs under the plain language of the purchase and sale agreement. We therefore award Zeng attorney fees and costs in an amount to be determined by this court's commissioner.

### CONCLUSION

We affirm. We award attorney fees on appeal to Zeng in an amount to be determined by this court's commissioner.

No. 59580-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

MAXA, J.

CRUSER, C.J.