COURT OF APPEALS D1
2015 APR -6 AM 11: 04


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| AIR SERV CORPORATION, | ) | No. 71103-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FLIGHT SERVICES & SYSTEMS, INC., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 6, 2015 |
| | ) | |

VERELLEN, A.C.J. — In a bench trial to determine damages for unjust enrichment or quantum meruit, findings of fact and conclusions of law must specify the measure and quantity of damages. Here, the trial court entered judgment for Air Serv Corporation (Air Serv) against Flight Services & Systems, Inc. (FSS) for $200,000, including attorney fees, and ordered an additional amount of $35,000 as sanctions for violations of various court rules. FSS appeals, contending that the trial court applied the wrong measure of damages, improperly excluded evidence, and erred in imposing an attorney fees award and sanctions. Because we cannot discern from the trial court's findings the basis for the award, we remand for further findings on the existing record.

## FACTS

On April 14, 2011, FSS entered into a contract with Delta Airlines to provide cabin cleaning services at Seattle-Tacoma airport for Delta's domestic and international flights. FSS was to begin providing these services on May 17, 2011. In order to provide

cleaning services for international flights, FSS was required to obtain a federal compliance agreement from the United States Department of Agriculture.

Sometime in May 2011, the United States Customs and Border Protection (CBP) notified Delta that FSS would not be permitted to board Delta's international flights because it did not have the required compliance agreement. CBP identified other companies that were in compliance, including Air Serv. Because FSS was unable to obtain a compliance agreement for at least another six to eight weeks and Delta had an immediate need for cleaning services on international flights beginning the next day, Delta consulted with CPB about having Air Serv provide temporary services until FSS obtained its own compliance agreement.

CPB agreed to allow FSS to provide the cleaning services without the compliance agreement so long as Air Serv supervised those services. Specifically, Air Serv would be required to supervise the handling and transfer of trash collected on the plane. Air Serv agreed to do so, and beginning on May 28, 2011, provided supervision of FSS's handling and transfer of the trash during cleanings.

Approximately two weeks later, Air Serv proposed to FSS a rate of $250 per plane for its services. After FSS objected to this amount, Air Serv proposed a lower rate of $175 per plane. Beginning in July 2011, Air Serv sent invoices to FSS at this price, for a total of 476 flights that were serviced during the temporary arrangement.

FSS did not pay the invoices, but Air Serv continued to provide the temporary services until FSS obtained its federal compliance agreement in September 2011. On September 2, 2011, Air Serv ceased providing its supervisory services to FSS. FSS did not pay the invoices, which totaled $83,300. On September 20, 2011, FSS disputed the

amount on the invoices and informed Air Serv that it would only pay a total of $3,511.10, based upon an hourly rate of $14.05.

On January 6, 2012, Air Serv filed a complaint against FSS seeking damages for breach of contract, consumer protection act violations, unjust enrichment and quantum meruit. The trial court dismissed the consumer protection and breach of contract claims on summary judgment, finding that there was no meeting of the minds on the price for the services rendered by Air Serv. But the trial court granted partial summary judgment for Air Serv for liability under the unjust enrichment and quantum meruit theories, with damages to be proven at trial.

After a bench trial on damages, the trial court found that FSS owed $83,300 to Air Serv for its services and $116,700 in attorney fees, for a total judgment award of $200,000. The court further ordered an additional $35,000 in sanctions against FSS based on "numerous violations of the rules of the Court, including, but not limited to CR 11, CR 26(g), CR 37(b) & (d), CR 56(g) and the Court's local rules."[1] FSS appeals.

## DISCUSSION

### Measure of Damages

FSS contends that the trial court applied the wrong measure of damages. FSS argues that instead of basing the damages award on the reasonable market rate, the trial court erroneously awarded expectation damages, a contract remedy that is unavailable here because the breach of contract claim was dismissed. Because the trial court's findings are inadequate for us to review this claim, we remand for further findings.

---

[1] Clerk's Papers (CP) at 2303. The trial court awarded attorney fees alternatively as part of a "make whole" theory of damages, or as part of the sanctions for FSS's violations of court rules.

Unjust enrichment and quantum meruit are methods of recovery for contracts "implied in law" and contracts "implied in fact."[2] Unjust enrichment is founded on notions of justice and equity and implies a contract in law to allow recovery for the value of a benefit conferred absent any contractual relationship when "fairness and justice require it."[3] Quantum meruit is founded in the law of contracts and implies a contract in fact when the defendant requests work, the plaintiff expects payment for the work, and the defendant knows or should know the plaintiff expects payment for the work.[4] Accordingly, recovery for quantum meruit is limited to the value of services rendered, while "'unjust enrichment applies to a far broader category of cases.'"[5]

The measure of recovery for unjust enrichment to a faultless claimant is either (1) "'the amount which the benefit conferred would have cost the defendant had it obtained the benefit from some other person in plaintiff's position,'" or (2) "'the extent to which the other party's property has been increased in value or his other interests advanced.'"[6] When services have been provided, the first measure is typically represented by the market value of the services rendered, while the second measure involves disgorgement of the profit the defendant received as a result of the services rendered.[7]

---

[2] Young v. Young, 164 Wn.2d 477, 483, 191 P.3d 1258 (2008).

[3] Id. at 483-84.

[4] Id. at 486.

[5] Id. at 486 (quoting Bailie Commc'ns Ltd. v. Trend Bus. Sys. Inc., 61 Wn. App. 151, 160, 810 P.2d 12 (1991)).

[6] Id. at 487 (quoting Noel v. Cole, 98 Wn.2d 375, 383, 655 P.2d 245 (1982)).

[7] See id. at 487-88.

Quantum meruit damages are measured by "the reasonable value of services."[8] While also typically represented by the market value, this measure can be calculated in a variety of ways.[9]

Here, the parties presented limited evidence to the trial court to establish the measure of damages under either theory. On market value, Air Serv took the position that the services were unique and that there was no market. In its discovery responses, FSS pointed to a single example of a "subcontractor" for cleaning services and alleged a custom and practice in the industry.[10] But in depositions, FSS's designated speaking agent Robert P. Weitzel could not recall the names of any companies that provided such services in the past and could not recall or was not aware of the responses of other companies to FSS's inquiries to provide the service Air Serv provided. While Weitzel stated he was aware of one prior occasion when FSS was involved in a similar arrangement long ago, he could not recall which company was involved or the price for such services. Because FSS did not provide discovery related to a market value, the trial court granted Air Serv's motion in limine to preclude FSS from offering evidence of market value.[11]

At trial, Air Serv presented evidence of how it arrived at the $175 price per plane that was invoiced but ultimately rejected by FSS. Toan Nguyen, who handled pricing for

---

[8] Id. at 485.

[9] See Losli v. Foster, 37 Wn.2d 220, 232, 222 P.2d 824 (1950) (actual cost of labor and materials); Irwin Concrete Inc. v. Sun Coast Properties, Inc., 33 Wn. App. 190, 653 P.2d 1331 (1982) (various contract prices); Modern Builders, Inc. v. Manke, 27 Wn. App. 86, 91, 93-95, 614 P.2d 1332 (1980) (fair market value of improvements or costs plus a reasonable profit).

[10] CP at 306-07.

[11] As discussed below, FSS's challenge to this ruling lacks merit.

Air Serv, testified that the pricing was based on labor, equipment, associated profit and liability, i.e., the financial and operational risk involved in allowing FSS to use its compliance agreement. Nguyen explained the breakdown of the first quote of $250 per plane as $60 for labor of three people, $30 profit, $10 for equipment and fuel maintenance, and $150 for risk of liability. He further testified that he lowered the price to $175 per plane to take into account that Air Serv would be providing supervisory services rather than actual cleaning based upon $20 for labor, no costs for equipment or fuel, a reduced price of $5 for profit, and $150 for liability risk. Air Serv also presented testimony, and the trial court found, that FSS told Air Serv it would pay the $175 per plane charge and that Air Serv relied upon that representation.

In support of its unjust enrichment theory based on disgorgement of profits, Air Serv presented evidence of revenues FSS received on the Delta contract during the period of time that Air Serv performed work for FSS. Air Serv presented invoices that FSS sent to Delta showing total charges for all services, domestic and international, of approximately $414,000. The charges for services itemized as "international" flights on these invoices totaled $77,730.50.[12] The invoices also listed additional charges, including "fixed fees." These were likely for services that were provided for both international and domestic flights but were not parsed out by FSS, despite discovery requests to do so.

---

[12] While FSS refers to invoices showing total gross revenues for international flights as $62,595.73, these invoices were never provided in discovery or submitted to the trial court and are therefore not part of the record for consideration by this court. Copies of these invoices have simply been appended to FSS's brief without any motion to supplement the record or any basis for doing so.

Air Serv also acknowledged in its trial brief, in its response to the half-time motion, and in closing argument that disgorgement of profits FSS received from its contract with Delta would normally require reducing the gross revenues by any "costs" FSS incurred to generate those revenues. Because FSS had refused to provide any cost information in interrogatory answers or document production and refused to arrange for a speaking agent able to address that topic, the court entered an order compelling discovery on costs. FSS did not provide any information on costs and instead took the position that it did not maintain cost information specific to the Seattle-Tacoma operation. As a result, no evidence of costs was produced in discovery or presented at trial.

The trial court entered findings and conclusions "quantifying the undisputed services" and concluding that FSS owed Air Serv "the reduced amount of $175/flight or $83,300 along with all associated attorney's fees and costs under both theories of quantum meruit and unjust enrichment."[13] But the trial court's findings and conclusions are incomplete. Specifically, other than reciting that the issue was to determine the reasonable value of services rendered by Air Serv to FSS, the court did not identify any particular theory of damages under either unjust enrichment or quantum meruit. The court's findings do not address whether market value was established under either an unjust enrichment or quantum meruit theory, or whether no market exists for the services Air Serv provided.

Nor are the court's findings sufficient to support a disgorgement of profit theory of unjust enrichment. The court made findings that FSS received "direct revenue" per

---

[13] CP at 2184.

7

plane paid by Delta as well as "fixed fees" paid each month by Delta. The court found that FSS received $77,730.50 in direct revenue due to Air Serv's actions from June to August 2011,[14] and a total amount of $77,439.09 for fixed fees.[15] The court further found that total revenues (domestic and international) FSS received from Delta were over $400,000. The court also made a finding that FSS intentionally failed to provide information regarding costs.

But the court made no finding or conclusion that because FSS intentionally withheld cost information, these revenues were the best the trial court could do to arrive at a disgorgement figure. There was no finding that $77,730.50, the full amount of direct revenue from international flights supervised by Air Serv from June through August, was a reasonable figure for revenue for all flights serviced (rounding off to exclude 15 additional flights in May and 10 additional flights in September). There was no finding of what portion of the fixed fees was properly allocated to work supervised by Air Serv and on what basis. There was no finding and no direct evidence that FSS was in any real jeopardy of losing its entire contract with Delta if it was unable to clean the international flights so that $400,000 total gross revenue paid by Delta has any significance in a disgorgement of profits theory. Conceivably, a figure of $83,300 could be within the range under a disgorgement theory, taking into account FSS's intentional

---

[14] This number corresponds to invoice billings for international flights only and does not include any direct revenue for cleaning the 15 international flights in May and 10 international flights in September that Air Serv supervised.

[15] This number appears to be based on Air Serv's calculation of fixed fees, which accounts for fixed fees of $10,373.03 in May, $18,528 in June, $20,746.06 in July, $18,528 in August, and $9,264 in September. See CP at 2428 (Air Serv's Trial Brief). The amount calculated for September is half of the monthly fees, although Air Serv stopped providing services on September 2. See Ex. 10.

withholding of cost information and the direct revenue from June to August, plus some additional revenue for 25 additional fights in May and September. But the court did not enter any specific findings supporting such a theory of recovery.

As previously noted, there is no finding or other determination by the trial court that $83,300 or any other dollar amount is the reasonable value of the services received by FSS, under any theory. Rather, at most, the findings suggest the trial court relied upon the price proposed by Air Serv at $175 per plane. This is problematic. Under either theory of unjust enrichment or quantum meruit, the price proposed by one party and rejected by another does not normally establish market or reasonable value. Air Serv provides no compelling authority that this evidence can serve as a back door measure of the reasonable value of services. To the extent that the trial court focused upon Air Serv's reliance upon FSS's representation that it would pay Air Serv the $175 per plane fee, that appears to be some form of estoppel or doctrine of account stated, theories that were not before the trial court.

CR 52 requires that the court make findings of fact and conclusions of law "[i]n all actions tried upon the facts without a jury."[16] "[F]indings must be made on all material issues in order to inform the appellate court as to 'what questions were decided by the trial court, and the manner in which they were decided.'"[17] When the findings are incomplete and "consideration of the legal questions involves speculation as to the legal theories the trial court pursued," the judgment must be set aside and the case

---

[16] CR 52(a)(1).

[17] Federal Signal Corp. v. Safety Factors, Inc., 125 Wn.2d 413, 422, 886 P.2d 172 (1994) (internal quotation marks omitted) (quoting Daughtry v. Jet Aeration Co., 91 Wn.2d 704, 707, 592 P.2d 631 (1979)).

remanded with instructions to the trial court to enter or clarify the findings on material issues.[18]

Because the trial court did not identify a precise theory of damages or make findings of a reasonable value of the services or how the court arrived at such a reasonable value of the services, we remand for additional findings. We appreciate that the parties provided the trial court with limited information regarding value and profit, but the existing findings are inadequate. Even a general finding that the reasonable value of the services is $200,000 would have been inadequate. The trial court must articulate the specific measure of damages and make precise findings supporting such damages, whether under a market value, modified disgorgement of profit, or some other "rare circumstances" measure of the value of services appropriate based upon total circumstances.[19]

### Attorney Fees as Damages

The trial court awarded attorney fees alternatively under a "make whole" theory of damages, or as part of sanctions imposed upon FSS. FSS contends that the court had no legal basis for imposing attorney fees as damages for claims of unjust enrichment and quantum meruit. We agree.

---

[18] Mayes v. Emery, 3 Wn. App. 315, 321-22, 475 P.2d 124 (1970).

[19] See RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 31 cmt. e ("In the rare case where there is no evidence of market, custom, or usage to settle the question, the reasonable value of the plaintiff's services—in a case within § 31, the amount 'necessary to prevent unjust enrichment'—is a question for the finder of fact, based on all the circumstances of the case.").

"Attorney fees will not be awarded as a part of the cost of litigation in absence of a contract, statute, or a recognized ground in equity."[20] Here, the trial court awarded attorney fees to Air Serv "as part of the remedy to make plaintiff whole in this matter under unjust enrichment and quantum meruit—a remedy fashioned to do substantial justice and put an end to the litigation . . . ."[21]

Air Serv offers no authority supporting an award of attorney fees and costs as "make whole" damages under unjust enrichment or quantum meruit. The award of attorney fees can only survive under the trial court's alternative rationale that the trial court has inherent authority to impose attorney fees as a sanction under CR 11 and other relevant rules.

*Attorney Fees and Additional $35,000 as Sanctions*

The trial court recognized an alternative basis for the award of $116,700 in attorney fees "as terms" and ordered $35,000 in additional sanctions against FSS payable to Air Serv.[22] The order awarding terms and sanctions includes several findings in support of the award. Additionally, the trial court's findings and conclusions include a section describing "procedural irregularities" involving the conduct of FSS counsel during trial.[23] And the April 15, 2013 order compelling discovery recites that FSS failed to comply with the case schedule without reasonable excuse or justification and that FSS has provided untrue statements in its discovery responses.

---

[20] Greenbank Beach and Boat Club, Inc. v. Bunney, 168 Wn. App. 517, 524, 280 P.3d 1133 (2012).

[21] CP at 2300.

[22] CP at 2300-01.

[23] CP at 2181-82.

"[I]n imposing CR 11 sanctions, it is incumbent upon the court to specify the sanctionable conduct in its order."[24] This requires specific findings that "either the claim is *not* grounded in fact or law and the attorney or party failed to make a reasonable inquiry into the law or facts, *or* the paper was filed for an improper purpose."[25] Otherwise, remand is necessary for the trial court to "make explicit findings as to which filings violated CR 11, if any, as well as how such pleadings constituted a violation."[26]

The trial court's findings here lack the specificity required to support the terms and sanctions award. Specifically, Finding (a) identifies eight pleadings as not well grounded in fact, filed without any reasonable investigation, and/or filed in bad faith and for improper purposes. While these recitations are required for CR 11 sanctions, the findings do not specifically identify the deficiencies in each of those documents. Finding (b) merely refers to "numerous improper filings" without identifying whether these are the same or in addition to those identified in Finding (a), and there is no indication what was improper.[27] Finding (c) recites that FSS failed to comply with the April 15, 2013 order compelling discovery, but offers no details, specifics, or even categories of failure.

Finding (d) states that FSS "intentionally failed to be appropriately prepared for its CR 30(b)(6) deposition" but again, provides no details or categories of inadequate preparation.[28] Finding (e) refers to FSS and its counsel intentionally certifying

---

[24] Biggs v. Vail, 124 Wn.2d 193, 201, 876 P.2d 448 (1994).

[25] Id.

[26] Id. at 202.

[27] CP at 2299.

[28] CP at 2299.

unwarranted discovery responses but again, contains no specifics. Finding (f) refers to declarations FSS filed in support of its summary judgment motion that were made in bad faith, without clarifying whether this finding is limited to the declarations listed in Finding (a) or includes other declarations. Finding (g) refers to "misrepresentations to the Court during trial," without further details.[29] Finding (h) and (i) offer no further insight into the actions that were the basis for sanctions.[30]

The trial court's findings in support of the sanctions award are inadequate to allow for meaningful review. Accordingly, we remand to allow the court to make additional findings on the existing record to determine an appropriate award. We also note that, in addition to findings that the hourly rates and itemized time are reasonable, the lodestar analysis should include more details supporting any award of attorney fees as terms.

Finally, FSS challenges the trial court's rulings limiting testimony of defense witnesses and excluding evidence as a sanction for discovery violations. FSS contends that the trial court erred by failing to conduct the inquiry required by Burnet v. Spokane Ambulance before excluding evidence as a discovery sanction.[31] We find no merit to these claims.

In Burnet, the court held that before excluding a witness as a sanction for a discovery violation, the trial court must explicitly consider whether a lesser sanction would probably suffice, whether the violation was willful or deliberate, and whether the

---

[29] CP at 2300.

[30] See CP at 2300 (providing for alternative award of attorney fees based on violations of court rules and finding that "[a]ll fees and expenses are reasonable and were necessarily incurred").

[31] 131 Wn.2d 484, 933 P.2d 1036 (1997).

violation substantially prejudiced the opponent's ability to prepare for trial.[32] If the Burnet standard applies, we may engage in harmless error analysis.[33]

Here, either Burnet has no application or any error was harmless. First, FSS contends that the trial court erred by refusing to allow FSS President Robert P. Weitzel to testify via Skype without conducting a Burnet inquiry before excluding the testimony. We disagree.

The court did not exclude a witness as a sanction for a discovery violation, thereby prompting a Burnet inquiry. Rather, the court was exercising its discretion to not permit Weitzel to testify remotely. Under CR 43(a)(1), the trial court has discretion to take testimony remotely from a witness who is not present in court. The trial court did not allow Weitzel to testify remotely after discovering that Weitzel was present in his office in Ohio rather than on a scheduled vacation. The court's decision that Weitzel failed to demonstrate good cause to testify remotely and that the defense had misrepresented to the court the reasons for his unavailability is not an exclusion of a witness for a discovery violation. Burnet has no application to this ruling.

Second, FSS contends that the trial court erred by not allowing Thomas Priola to testify as FSS's speaking agent (CR 30(b)(6) witness) because the court failed to conduct a Burnet inquiry before excluding the testimony. We disagree.

After the court ruled that Weitzel was unable to testify by Skype as FSS's CR 30(b)(6) witness, Air Serv moved in limine to limit defense witness Priola from testifying as the speaking agent for FSS because he was not designated as a

---

[32] Id. at 494; Jones v. City of Seattle, 179 Wn.2d 322, 338, 314 P.3d 380 (2014).
[33] Jones, 179 Wn.2d at 343.

CR 30(b)(6) witness. The trial court agreed, ruling that his testimony would be limited and denying FSS's request to call Priola. As the court explained:

> It's been denied because you failed to comply with the discovery rules, which requires that you as an attorney of record shall designate him accordingly, not when one witness is inconvenienced so then you just morph another witness into the 30(b)(6) at your convenience. We have rules for a reason and they need to be complied with, and they haven't been done so here.[34]

The record is clear that FSS did not designate Priola as FSS's 30(b)(6) witness. Air Serv had disclosed Priola as a witness to testify only about communications directly between FSS and Air Serv. FSS did not specifically disclose him as a witness but simply included on its primary witness list anyone included on Air Serv's list. While that would include Priola, it would only be to the extent he was called by Air Serv, i.e., to testify only about communications between FSS and Air Serv. "While a 'reservation of rights' is sufficient to disclose witness names, it is insufficient to disclose the substance of a proposed witness's testimony."[35] As in Jones, simply reserving the right to call any witnesses appearing on the other party's list of potential witnesses does not satisfy the requirements of the local rules for witness disclosure.[36]

The court's lack of a Burnet inquiry was at most harmless error. FSS did not make an offer of proof and identify the specific testimony it sought to provide through Priola; FSS simply requested to designate him as its speaking agent.[37] Thus, FSS is

___

[34] Report of Proceedings (RP) (June 25, 2013) at 370.

[35] Jones, 179 Wn.2d at 342.

[36] Id. at 343. The local rules require parties to provide a list disclosing primary and additional witnesses according to trial schedule deadlines and to include a brief description of the witness's relevant knowledge. Id. at 341; see KCLR 26(k).

[37] FSS simply cites to objections to questions that were sustained. See RP (June 25, 2013) at 345, 346, 350, 355-56, 357.

unable to demonstrate whether Priola had any relevant testimony to offer as a speaking agent for FSS and what effect, if any, preventing Priola from testifying as FFS's speaking agent had on the outcome of the case.

Finally, FSS contends that the trial court erred by failing to conduct a Burnet inquiry before preventing FSS from presenting evidence of industry standards or market rates as a sanction for failing to provide this in discovery. We disagree.

On the second day of trial, Air Serv filed a motion in limine to exclude evidence relating to costs incurred by FSS, revenues received by FSS other than the invoices provided, and any industry standard or market rate of the value of the services at issue. The basis for requesting the exclusion was FSS's failure to provide such information in response to repeated discovery requests and court orders compelling discovery. The trial court granted the motion on evidence of industry standard and market value, but reserved ruling on evidence of costs.[38]

Again, any error in failing to conduct a Burnet inquiry before granting the motion in limine was harmless. FSS did not make an offer of proof of evidence relating to industry standard or a market rate.[39] Indeed, the record reveals that the claimed "industry standard" was based on statements in declarations submitted by FSS that

---

[38] See RP (June 25, 2013) at 268, 270. FSS challenges only the exclusion of evidence of industry standard and market rate.

[39] During argument on the motion in limine, the court asked counsel for FSS if there was going to be testimony on this issue, to which counsel responded, "I don't recall any testimony on market rate." RP (June 25, 2013) at 267. The court again asked what evidence FSS had relating to industry standards or market rate, and counsel responded, "I don't think anybody has testified to industry standards or market rate," at which point the court noted, "Then you're . . . conceding." RP (June 25, 2013) at 269.

FSS was later unable to verify.[40] Thus, FSS fails to show that a ruling excluding such evidence had any effect on the outcome of the trial.

*Bias*

FSS argues that trial judge exhibited bias and this matter should not be remanded to the same judge. "Litigants 'must submit proof of actual or perceived bias to support an appearance of impartiality claim.'"[41] While FSS recites several instances of adverse rulings and accuses the trial judge of being "caustic" and "hostile," those rulings and comments were based upon the conduct of FSS and its attorneys. FSS fails to establish bias. Remand to the same trial judge for additional findings is appropriate.

We remand for further findings consistent with this opinion.

WE CONCUR:

---

[40] See CP at 306-07, 1462.

[41] GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 154, 317 P.3d 1074 (2014) (quoting Magana v. Hyundai Motor Am., 141 Wn. App. 495, 523, 170 P.3d 1165 (2007), rev'd on other grounds, 167 Wn.2d 570, 222 P.3d 191 (2009)).